IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:23-MJ-121 |
| CHRISTOPHER KIRCHNER (01) | |

## CRIMINAL COMPLAINT

Wire Fraud
(Violation of 18 U.S.C. § 1343)

I, Qiana Davis, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

> On or about the December 14, 2020, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendant **Christopher Kirchner** knowingly devised and intended to devise the scheme to defraud described below, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, writings, signals, pictures, and sounds, namely, an email to private bankers at Financial Institution-1 falsely claiming that he took an authorized distribution when, in fact, he had not, in violation of 18 U.S.C. § 1343.

1. I am a Special Agent with the FBI and have been since 2015. I am currently assigned to the complex financial crimes section of the FBI Dallas Field Office. As an FBI Special Agent, I have participated in investigations of complex financial frauds including, among other things, wire fraud. I have conducted and participated in, among other things, surveillance, the execution of search warrants, debriefings of informants, and interviews of witnesses.

2. This affidavit is made in support of a criminal complaint against CHRISTOPHER KIRCHNER. The information contained in this affidavit is based on my personal participation in this investigation, reports made to me by other law enforcement authorities, interviews with witnesses and victims, and my review of evidence, including emails and bank records. Since this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation.

## The Defendant and Relevant Entities

3. In August 2022, the FBI began investigating the misappropriation of assets belonging to an early-stage supply-chain management software company called Slync.io ("Slync"), which is headquartered in the Northern District of Texas.

4. KIRCHNER founded Slync with others. He was Slync's CEO from approximately 2017 until July 2022, when he was suspended by Slync's Board of Directors based on allegations of misconduct regarding missed payroll payments, misrepresentations about payroll payments, and public allegations regarding Slync funds, customers, and accounts. Slync formally terminated KIRCHNER in August 2022. KIRCHNER maintains his primary residence in the Northern District of Texas.

5. Slync was funded in part by private equity investors, both individuals and venture capital groups. This funding took place via two primary funding campaigns: (1) a Series A investment round totaling approximately $7 million in or about March 2020; and (2) a Series B investment round totaling approximately $50 million in or about December 2020.

## Misappropriation of $20 Million from Slync

6. On or about December 11, 2020, as part of its Series B investment into Slync, Financial Services Firm[1] wired approximately $35 million to a Slync bank account at Financial Institution-1.[2] Pursuant to the investment agreement between Slync and Financial Services Firm, these funds were supposed to be used for, among other things, full repayment of a Paycheck Protection Program loan obtained by Slync, product development, and other general corporate purposes.

7. The Slync bank account at Financial Institution-1 could be accessed only by KIRCHNER and another Slync employee ("Individual-1"). Additionally, whenever KIRCHNER initiated a wire or transfer of more than $100,000 from this account, Individual-1's approval was required to complete the transfer. Similarly, whenever Individual-1 initiated a wire or transfer of more than $100,000 from the account, KIRCHNER's approval was required to complete the transfer.

8. On or about December 13, 2020, KIRCHNER communicated with Individual-1 via text message regarding the Slync bank account at Financial Institution-1. In this exchange, KIRCHNER represented to Individual-1 that he was transferring money from the Slync account to two purported locations: (1) an "investment account"; and (2) a "chase" account. Since any transfer over $100,000 required Individual-1's approval, KIRCHNER told Individual-1 he would "have to approve those wires."

---

[1] The identities of all anonymized individuals and entities herein are known to me.
[2] Financial Institution-1 is federally chartered bank, the deposits of which were insured by the Federal Deposit Insurance Corporation. Financial Institution-1 conducts business in several states, including Texas.

9. KIRCHNER's representations to Individual-1 were false—KIRCHNER did not move the funds to either an "investment account" or a "chase" account. Instead, on or about December 14, 2020, KIRCHNER transferred $20 million from the Slync account to his personal checking account at Financial Institution-1.

10. On or about December 14, 2020, KIRCHNER emailed private bankers at Financial Institution-1 regarding the $20 million transfer from the Slync account to his personal checking account. In this email, KIRCHNER explained:

> I took a distribution from my company today and am moving money out for a few things that I need to get taken care of before year end.
>
> One, is a wire for $5,000,000 to an escrow company for a plane that I am purchasing. I need this one completed ASAP as it's very time sensitive in order to complete a transaction this month.
>
> Could you make sure this one in particular is done as fast as possible?

11. Based on my participation in the investigation to date, I am aware that KIRCHNER's representation that he "took a distribution from [Slync]" was false. At no point did KIRCHNER receive authorization from Slync's Board of Directors for a $20 million distribution of Series B investor funds into his personal checking account.

12. KIRCHNER misappropriated the $20 million raised from Financial Services Firm for his personal use, including as follows:

   a. Approximately $16 million was used for the deposit and purchase of a Gulfstream GV-SP (G550) private jet aircraft.

   b. Approximately $800,000 was transferred to other bank accounts that KIRCHNER controlled.

    c. Approximately $495,000 was used to secure a private luxury suite at the stadium of a local professional sports team.

    d. Approximately $22,000 was used to pay membership fees for a private golf and social club located in Westlake, Texas, where KIRCHNER was a member.

13. Based on the foregoing, there is probable cause to believe that on or about December 14, 2020, in the Fort Worth Division of the Northern District of Texas, KIRCHNER committed wire fraud, in violation of 18 U.S.C. § 1343.

### Conclusion

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued so that the defendant CHRISTOPHER KIRCHNER can be dealt with according to law. Because public filing of this document could result in a risk of flight by KIRCHNER, who has not yet been apprehended, as well as jeopardize the government's investigation, your affiant respectfully requests that the complaint and arrest warrant be filed under seal.

QIANA DAVIS
Special Agent, FBI

SWORN AND SUBSCRIBED before me, at 10:20 a.m. on this 10th day of February 2023, in Fort Worth, Texas.

Jeffrey L. Cureton
United States Magistrate Judge